97 F.3d 1445
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Megan BARKER, Plaintiff, Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant, Appellee.
 No. 96-1622.
 United States Court of Appeals, First Circuit.
 Oct. 9, 1996.
 
 David A. Chase and Macdonald & Chase on brief for appellant.
 Jay McCloskey, United States Attorney, James M. Moore, Assistant United States Attorney, and Thomas D. Ramsey, Assistant Regional Counsel, Region I, Social Security Administration, on brief for appellee.
 D.Me.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, SELYA and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant-appellant Megan Barker challenges the denial of disability benefits under the Social Security Disability Insurance and Supplemental Security Income programs. We affirm.
 
 
 2
 In 1982, claimant tripped on a concrete stair and fell on her left knee while running with her company in the United States Army. She suffered a contusion or laceration, and she was removed from regular duty for a short period of time. Barker finished her term in the military and received a regular discharge in 1984. Thereafter, she worked at various jobs (mainly cashiering) until August 1992.
 
 
 3
 In 1993, claimant applied for disability benefits due to patellofemoral pain syndrome. She complained of swelling and pain in her left knee, especially if she walks or stands a lot. She also complained that her knee occasionally "locks up" or "gives out." She stated that she has had pain in her knee since her injury in 1982, but that the pain has gotten worse. She described the pain as constant and claimed that it is unrelieved by medication (Ibuprofen or Motrin).
 
 
 4
 The Administrative Law Judge (ALJ) found that claimant has patellofemoral pain syndrome, but that it does not significantly limit her ability to perform basic work-related functions. Having concluded that Barker does not have a severe impairment, the ALJ terminated the review process at Step 2, or the severity stage, of the five-step sequential inquiry. See Bowen v. Yuckert, 482 U.S. 137 (1987); McDonald v. Secretary of Health & Human Servs., 795 F.2d 1118 (1st Cir.1986). The decision of the ALJ became the final decision of the Secretary when the Appeals Council denied review. Claimant appealed to the district court, which referred the matter to a magistrate judge for report and recommendation. The magistrate recommended affirmance, and the district judge adopted the magistrate's recommendation. This appeal followed.
 
 
 5
 The medical records submitted by the claimant are from the Veterans Administration (VA). These records reveal that claimant's left knee was examined on two occasions by a VA physician for the purpose of determining whether she is eligible for a VA disability rating. In addition, the VA Disability Council sent claimant to see Dr. Pepe, an orthopedic consultant. Dr. Pepe examined claimant on one occasion, December 9, 1992. Although he diagnosed patellofemoral pain syndrome, Dr. Pepe's objective findings are almost entirely negative. On March 11, 1993, the VA assigned claimant a 30% disability rating. At that time, objective findings were said to show a small amount of effusion in the left knee, as well as some warmth and diffuse tenderness in the knee. On October 19, 1993, claimant arrived at Dr. Pepe's office without an appointment and spoke to him briefly in the hallway. Following this conversation, Dr. Pepe wrote a short note in which he stated: "[The claimant] says she has pain in her legs that precludes sitting or standing at work. Would recommend no sitting or standing in order to help the pain."
 
 
 6
 As an initial matter, we are persuaded that the ALJ could properly reject Dr. Pepe's October 19, 1993 assessment essentially for the reasons stated by the magistrate in his recommended decision.[1] We add that there is conflicting medical evidence in the record. None of the medical consultants found any limitation in claimant's ability to sit or stand.[2] Moreover, Dr. Pepe's note is conclusory and devoid of objective medical findings. See 20 C.F.R. §§ 404.1527(d) (explaining how the Secretary weighs medical opinions), 416.927(d) (same); Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992) ("The ALJ need not accept an opinion of a physician--even a treating physician--if it is conclusory and brief and is unsupported by clinical findings.").
 
 
 7
 We also think the ALJ could properly reject the credibility of claimant's statements concerning the limiting effects of her pain and other symptoms. See Irlando Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.1991) (per curiam) (explaining that it is the responsibility of the Secretary to determine issues of credibility). The VA treatment record is quite sparse, and most of the objective medical findings are negative. Claimant's allegations that her pain significantly limits her ability to sit or stand is inconsistent with the opinions of the medical consultants. In addition, the ALJ properly could find that claimant's allegations are inconsistent with her reported activities.[3] See 20 C.F.R. §§ 404.1529 (explaining how the Secretary evaluates pain), 416.929 (same).
 
 
 8
 For the foregoing reasons, we are persuaded that the Secretary's severity finding is supported by substantial evidence. Accordingly, the judgment below is affirmed.
 
 
 
 [1]
 The magistrate stated:
 Given that Dr. Pepe had last examined the plaintiff nearly ten months before writing the October , 1993 note, that he had no advance notice of her visit (and thus no opportunity to review her file), and that he wrote the note at the plaintiff's request and without examining her anew, the Administrative Law Judge was entitled to disregard it ...
 Report and Recommended Decision at 5-6.
 
 
 [2]
 Dr. Johnson, a State agency consultant, reviewed the medical evidence and concluded that claimant does not have an impairment which limits her ability to perform basic work-related functions. Dr. Goffin, a second State agency consultant, completed a Residual Functional Capacity Assessment which indicates no limitation in claimant's ability to sit or stand. Dr. Babcock, a medical advisor, testified at the administrative hearing that he had "a lot of trouble placing much credibility in [Dr. Pepe's] note" in light of the fact that Dr. Pepe did not examine claimant before writing it
 
 
 [3]
 Claimant is able to do housework (including dusting, vacuuming, laundry, and washing dishes) and, according to one of her reports, she is able to do grocery shopping. She also drives her car, visits friends, and has taken a computer training course. Each of these activities involves sitting or standing